**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IMPACT NETWORKING, LLC, | ) |
|     Plaintiff, | ) |
|     v. | ) Civil Action No. |
| | ) Honorable _____ |
| THE BALDWIN GROUP SOUTHEAST, LLC d/b/a BALDWIN SOUTHEAST INSURANCE SERVICES, LLC f/k/a BALDWIN KRYSTYN SHERMAN PARTNERS, LLC | ) JURY DEMANDED |
|     Defendant. | |

## **VERIFIED COMPLAINT**

Plaintiff, Impact Networking, LLC ("Impact"), by its undersigned counsel and for its Verified Complaint against Defendant, The Baldwin Group Southeast, LLC d/b/a Baldwin Southeast Insurance Services, LLC f/k/a Baldwin Krystyn Sherman Partners, LLC ("BKS"), states as follows:

### **NATURE OF THE CONTROVERSY**

1. Impact brings this action against BKS, an insurance broker, to recover substantial sums of money it was required to pay for employee medical benefits under a program procured by BKS for Impact that exceeded what had been represented by BKS as a cap for all medical claims. BKS misrepresented the true costs of the medical benefits program it sold to Impact in order to induce Impact to leave its long-term broker and insurer and switch to the BKS sponsored medical benefit program. Rather than having its medical payments "capped" under the BKS sponsored program, Impact suffered significant medical claim expenses in excess of the represented cap. BKS's misrepresentations and procurement of a medical insurance policy with terms that significantly differed from those that were presented to and requested by Impact resulted in Impact

1

paying in excess of $1,000,000 above the represented cap for 2024. Impact is entitled to recover the excess payments as damages caused by BKS's misconduct.

## PARTIES

2. Impact Networking, LLC is an Illinois limited liability company with its principal place of business in Lake Forest, Illinois. Impact has four members who are individuals that are citizens of Illinois.

3. The Baldwin Group Southeast, LLC d/b/a Baldwin Southeast Insurance Services, LLC f/k/a Baldwin Krystyn Sherman Partners, LLC is a Florida limited liability company with its principal place of business in Tampa, Florida. BKS does business in Illinois. BKS's members are Trevor Baldwin, Seth Cohen, Brad Hale, and The Baldwin Group Insurance Advisory Solutions Holdings, LLC f/k/a BRP Middle Market Insurance Holdings, LLC ("BRP"). Baldwin, Cohen, and Hale are citizens of Florida. BRP is a Florida limited liability company with its principal place of business in Tampa, Florida. Upon information and belief, BRP's members are also Baldwin, Cohen, Hale, as well as The Baldwin Insurance Group Holdings, LLC ("BIGH"). BIGH is a Delaware limited liability company with its principal place of business in Tampa, Florida. Upon information and belief, BIGH's members are also Baldwin, Cohen, Hale, as well as The Baldwin Insurance Group, Inc. ("BIG"). [1] BIG is a Delaware corporation with its principal place of business located in Tampa, Florida.

---

[1] Plaintiff has made reasonable, good faith efforts to ascertain the identity and citizenship of each member of BKS, BRP, and BIGH. These efforts include searching for and reviewing corporate records and filings maintained by the Florida Department of State's Division of Corporations, the California Secretary of State, the Delaware Secretary of State, and the Illinois Secretary of State and reviewing Uniform Commercial Code ("UCC") filings. Based on the information obtained through these sources, Plaintiff alleges that all members of BKS, BRP, and BIGH are citizens of the State of Florida and/or Delaware. To confirm these allegations with certainty Plaintiff is also filing a motion seeking leave to conduct limited jurisdictional discovery. *See AbbVie Inc. v. Payer Matrix, LLC*, No. 23-CV-2836, 2023 WL 12067605, at *1 (N.D. Ill. Dec. 4, 2023) ("When, after undertaking and documenting reasonable investigatory efforts, the plaintiff truly cannot determine who the members of the defendant LLC are, some courts have permitted early jurisdictional discovery or else allowed a little latitude.").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties (*see* par. 3 *supra*) and the amount in controversy is more than $75,000.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this district.

## GENERAL ALLEGATIONS

6. In August of 2023, BKS approached Impact to introduce its services as an insurance broker for the Impact medical benefit plan.

7. Prior to this time, Impact had worked with a different insurance broker and insurer for its medical benefits for over twenty-four years.

8. To lure Impact away from its previous broker and insurer, BKS recommended that Impact change from a fully insured plan to a self-funded or level-funded plan with pharmacy carve outs[2] and represented that by doing so, Impact will generate total savings of approximately $1.2-1.3 million annually.

9. Based on BKS's representation that Impact will save over a million dollars annually, Impact decided to move forward with BKS as its broker of record for its medical benefit plan. The appointment of BKS as Impact's broker of record gave BKS the ability to negotiate insurance coverage on Impact's behalf and the right to receive commissions paid by carrier partners for its services in obtaining the coverage.

---

[2] Under a fully insured plan, the employer pays fixed monthly premiums to an insurer in exchange for full coverage regardless of the number of claims submitted each month. Under a self-funded plan, the employer pays all claims as they are incurred itself. Under a level-funded plan, the employer pays a set monthly fee that includes the estimated cost for monthly claims. Under both self-funded and level funded plans, the employer can purchase stop loss insurance coverage to cover claims in excess of a predetermined amount. Specific stop loss coverage protects against high claims on any one individual employee. Aggregate stop loss coverage establishes a ceiling on the amount of total expenses during a contract period.

3

10. Thereafter, BKS presented Impact with options for its medical benefit plan, including detailing the differences between Impact's existing fully insured plan and a self-funded plan and illustrating the nature of stop loss coverage. Specifically, with regards to stop loss coverage, BKS stated that aggregate stop loss coverage acts as a "protection that establishes a ceiling on the amount of total expenses during a contract period."

11. Thereafter, on November 8, 2023, BKS emailed Impact stating as follows: "see the attached firm offer from EVHC/Cigna. It CAPS your max cost below your current spend with BCBS of IL, and allows a full Rx carve out. This is a true level funded plan, without the exposure of a fully self funded plan. If you care [sic] considering pursuing, Rx and all of the cost containment we recommend, this option is really a no-brainer" (the "November Email"). (*See* November Email attached hereto and incorporated herein as Exhibit A at A1.)

12. The "firm offer" attached to the November Email, which was prepared by BKS, included a spreadsheet listing different offers, including the referenced offer from EVHC/Cigna. (Ex. A at A10.)

13. Consistent with BKS's written representation in the November Email, the offer from EVHC/Cigna stated that Impact's max costs would be capped by listing the "Maximum Reimbursement" under both the "Specific Stop Loss" and the "Aggregate Stop Loss" categories as "Unlimited" and the "Fixed Costs + Aggregate Claim Liability /Annual" as "$7,184,083" (the "EVHC Firm Offer"). (*Id.*) The "Fixed Costs + Aggregate Claim Liability /Annual" figure was less than Impact's then-current spend with BCBS of IL. (*Id.*)

14. After discussions, Impact specifically requested that BKS move forward with the EVHC Firm Offer, which included unlimited stop loss reimbursement and capped Impact's maximum spend for coverage year 2024 at $7,184,083. (*See id.*)

4

15. In response to Impact's request, BKS provided Impact with an updated spreadsheet confirming all the benefits and rates that would be in force on January 1, 2024 based on Impact's request (the "Sold Spreadsheet"). (*See* Email and Sold Spreadsheet attached hereto and incorporated herein as Exhibit B.)

16. The Sold Spreadsheet identified the EVHC Firm Offer as the option selected, again confirmed that Impact's max costs would be capped by listing the "Maximum Reimbursement" under both the "Specific Stop Loss" and the "Aggregate Stop Loss" categories as "Unlimited" and lowered the "Fixed Costs + Aggregate Claim Liability /Annual" to "$7,117,456." (Ex. B at B4.) Again, the "Fixed Costs + Aggregate Claim Liability /Annual" figure was less than Impact's then-current spend with BCBS of IL. (*Id.*)

17. After sending the Sold Spreadsheet and in further response to Impact's request, BKS communicated with EVHC regarding procuring the requested coverage and directed the preparation of the Application for Stop Loss Insurance (the "Application").

18. While the Application included unlimited coverage for the specific stop loss insurance, contrary to BKS's representations, and unbeknownst to Impact, the Application included a "Maximum Aggregate Benefit" of "$1,000,000" for the aggregate stop loss insurance.

19. After submission of the Application, Impact was issued a Stop Loss Insurance Policy with an effective date of January 1, 2024 (the "Stop Loss Policy").

20. Again, while the Stop Loss Policy included unlimited coverage for the specific stop loss insurance, contrary to BKS's representations, and unbeknownst to Impact, the Stop Loss Policy obtained by BKS for Impact included a "Maximum Aggregate Benefit" of "$1,000,000" for the aggregate stop loss insurance.

21. The "Maximum Aggregate Benefit" for the aggregate stop loss insurance meant

that once Impact's claims hit the pre-determined attachment point, the Stop Loss Policy would come into play to cover the next $1,000,000 in medical claims; however, once the $1,000,000 was exhausted, Impact would again become fully responsible for payment of any and all medical claims submitted for the calendar year without any cap applying.

22. During the 2024 coverage year, EVHC sent Impact monthly net cost reports detailing, among other items, the amount of claims submitted.

23. By June of 2024, as Impact saw claim numbers creeping up and RX savings not where expected based on BKS's representations, Impact requested a meeting with BKS to discuss.

24. In response BKS again stated "that the maximum premium exposure with EVHC is $7,117,452 [sic]" and that "the maximum plan year exposure" was in place "regardless of claims performance." (*See* June 25, 2024 Email, attached hereto and incorporated herein as Exhibit C at C1.)

25. BKS's representations both before and after procuring the Stop Loss Policy for Impact directly conflict with the Application BKS directed and the Stop Loss Policy that it obtained for Impact, both of which contained a "Maximum Aggregate Benefit" of "$1,000,000" for the aggregate stop loss insurance.

26. For the 2024 coverage year, Impact's costs were in excess of $10,000,000.

27. Despite BKS's representations that the Stop Loss Policy would cap Impact's max costs at $7,117,456 for the 2024 coverage year, the Stop Loss Policy obtained by BKS merely covered $1,000,000 of the submitted claims, leaving Impact to pay well over $1,000,000 in excess of the max costs represented by BKS.

## COUNT I
**Fraud**

28. Impact incorporates the allegations set forth in Paragraphs 1 through 27 above as if fully set forth herein.

29. Prior to BKS obtaining the Stop Loss Policy for Impact, BKS represented to Impact that the proposed policy "CAPS" Impact's "max cost below" Impact's "current spend with BCBS of IL" and provided Impact with the EVHC Firm Offer and Sold Spreadsheet. (Ex. A at A1, A10; Ex. B at B4.)

30. The EVHC Firm Offer specifically stated that the aggregate stop loss coverage maximum reimbursement was "Unlimited" and that Impact's maximum annual spend would be "$7,184,083." (Ex. A at A10.)

31. Likewise, the Sold Spreadsheet confirmed that the aggregate stop loss coverage maximum reimbursement was "Unlimited" and reduced Impact's maximum annual spend to "$7,117,456." (Ex. B at B4.)

32. Despite these explicit representations made by BKS to Impact, the Stop Loss Policy did not cap Impact's max costs; instead, it merely covered claims in excess of Impact's deductible up to $1,000,000 and any claims in excess of that amount were required to be covered directly by Impact.

33. BKS knew and understood that the Stop Loss Policy was represented to Impact as being a policy that would cap its maximum annual spend for medical claims; yet, BKS directed the preparation of the Application and obtained the Stop Loss Policy for Impact with a "Maximum Aggregate Benefit" of $1,000,000 without advising Impact of the same.

34. BKS's deceitful conduct was willful and wanton.

35. BKS made the representations that the Stop Loss Policy would cap Impact's

7

annual expense for medical claims to induce Impact to purchase the Stop Loss Policy.

36. In light of BKS's misconduct, Impact reasonably relied on the accuracy and truthfulness of the statements made by BKS when deciding to purchase the Stop Loss Policy, including but not limited to the fact that the Stop Loss Policy would cap Impact's maximum costs for medical claims.

37. As a result of BKS's false statements, Impact has suffered damages in excess of $1,000,000, representing costs that Impact paid in excess of the maximum cost represented by BKS ($7,117,456).

WHEREFORE, Plaintiff Impact Networking, LLC respectfully requests this Court enter an order in favor of Impact and against Defendant The Baldwin Group Southeast, LLC d/b/a Baldwin Southeast Insurance Services, LLC f/k/a Baldwin Krystyn Sherman Partners, LLC for:

a. Monetary compensation for Plaintiff's damages resulting from the Defendant's fraud in excess of $1,000,000 to be proven at trial;

b. Punitive damages for Defendant's willful and wanton conduct;

c. Plaintiff's costs; and

d. Such other and further relief in Impact's favor as this Court deems just and proper.

## COUNT II
### Violation of the Consumer Fraud Act

38. Impact incorporates the allegations set forth in Paragraphs 1 through 27 above as if fully set forth herein.

39. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act") prohibits:

> [U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact,

with intent that others rely upon the concealment, suppression or omission of such material fact, . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

40. BKS violated the Consumer Fraud Act by misrepresenting material facts, including that Impact's "max cost" would be capped below its "current spend with BCBS of IL," that the maximum reimbursement under the Stop Loss Policy was "Unlimited", and that Impact's "Fixed Costs + Aggregate Claim Liability /Annual" would be "$7,117,456", with the intent that Impact rely on that deception. (*See* Ex. A at A1, A10; Ex. B at B4.)

41. BKS knew that the information as presented was false, misleading or deceptive as shown by, among other things, BKS directing the preparation of the Application for the Stop Loss Policy setting the maximum aggregate benefit at $1,000,000.

42. Impact reasonably relied on the misrepresentations of material fact during and in the course of conduct involving trade or commerce.

43. Impact has suffered damages as a result of BKS's violation of the Consumer Fraud Act, including payment of medical claims in excess of the represented cap in an amount in excess of $1,000,000.

44. Impact's damages were proximately caused by BKS's deception.

WHEREFORE, Plaintiff Impact Networking, LLC respectfully requests this Court enter an order in favor of Impact and against Defendant The Baldwin Group Southeast, LLC d/b/a Baldwin Southeast Insurance Services, LLC f/k/a Baldwin Krystyn Sherman Partners, LLC for:

  a. Monetary compensation for Plaintiff's damages resulting from the Defendant's fraud in excess of $1,000,000 to be proven at trial;

  b. Punitive damages for Defendant's deceptive conduct;

  c. Plaintiff's attorneys' fees, costs, and expenses; and

d.  Such other and further relief in Impact's favor as this Court deems just and proper.

## COUNT III
**Negligent Procurement**
**(In the alternative to Counts I and II)**

45. Impact incorporates the allegations set forth in Paragraphs 1 through 27 above as if fully set forth herein.

46. Under Section 2-2201(a) of the Illinois Code of Civil Procedure, "[a]n insurance producer, registered firm, and limited insurance representative shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured." 735 ILCS 5/2-2201(a).

47. As Impact's insurance broker, at all relevant times BKS acted as an insurance producer and owed Impact a duty to exercise ordinary care and skill in procuring coverage requested by Impact.

48. When attempting to get Impact to purchase an insurance policy, BKS represented to Impact that the proposed policy would "CAP" Impact's "max cost below" Impact's "current spend with BCBS of IL", that the stop loss coverage maximum reimbursement was "Unlimited," and that Impact's maximum annual spend would be "$7,117,456." (*See* Ex. A at A1, A10; Ex. B at B4.)

49. Impact specifically requested that BKS obtain the policy detailed in BKS's November 8th Email and the EVHC Firm Offer, which offer was confirmed by BKS in the Sold Spreadsheet.

50. BKS breached its duty to Impact by negligently directing the preparation of the Application and procuring the Stop Loss Policy in that both included a "Maximum Aggregate Benefit" for the aggregate stop loss insurance of $1,000,000 rather than providing a cap on

10

Impact's maximum annual spend.

51. As a direct and proximate result of BKS's breach, Impact has suffered damages in excess of $1,000,000, representing costs that Impact had to pay in excess of the maximum cost represented by BKS and requested by Impact ($7,117,456).

WHEREFORE, Plaintiff Impact Networking, LLC respectfully requests this Court enter an order in favor of Impact and against Defendant The Baldwin Group Southeast, LLC d/b/a Baldwin Southeast Insurance Services, LLC f/k/a Baldwin Krystyn Sherman Partners, LLC for:

   a. Monetary compensation for Plaintiff's damages resulting from the Defendant's negligent procurement in excess of $1,000,000 to be proven at trial;

   b. Plaintiff's costs; and

   c. Such other and further relief in Impact's favor as this Court deems just and proper.

## COUNT IV
### Breach of Contract

52. Impact incorporates the allegations set forth in Paragraphs 1 through 27 above as if fully set forth herein.

53. Impact and BKS entered into a contract whereby BKS was to act as Impact's broker of record and procure a medical benefits plan for Impact.

54. Specifically, Impact requested and BKS agreed to procure a medical benefits plan from EVHC for the year 2024 that included unlimited specific and aggregate stop loss coverage and that capped Impact's fixed costs and aggregate claim liability for 2024.

55. BKS breached the contract to procure insurance by directing the preparation of the Application and procuring the Stop Loss Policy that both included a "Maximum Aggregate Benefit" for the aggregate stop loss insurance of $1,000,000 rather than providing a cap on Impact's maximum annual spend.

11

56. Impact made all required payments for the medical benefits plan.

57. As a result of BKS's breach, Impact has suffered damages in excess of $1,000,000, representing costs that Impact had to pay in excess of the maximum cost represented by BKS and requested by Impact ($7,117,456).

WHEREFORE, Plaintiff Impact Networking, LLC respectfully requests this Court enter an order in favor of Impact and against Defendant The Baldwin Group Southeast, LLC d/b/a Baldwin Southeast Insurance Services, LLC f/k/a Baldwin Krystyn Sherman Partners, LLC for:

a. Monetary compensation for Plaintiff's damages resulting from the Defendant's breach of contract in excess of $1,000,000 to be proven at trial;

b. Plaintiff's costs; and

c. Such other and further relief in Impact's favor as this Court deems just and proper.

**COUNT V**
**Negligent Misrepresentation**
**(In the alternative to Counts I and II)**

58. Impact incorporates the allegations set forth in Paragraphs 1 through 27 above as if fully set forth herein.

59. Prior to BKS obtaining the Stop Loss Policy for Impact, BKS represented to Impact that the proposed policy "CAPS" Impact's "max cost below" Impact's "current spend with BCBS of IL" and provided Impact with the EVHC Firm Offer and Sold Spreadsheet. (Ex. A at A1, A10; Ex. B at B4.)

60. The EVHC Firm Offer specifically stated that the aggregate stop loss coverage maximum reimbursement was "Unlimited" and that Impact's maximum annual spend would be "$7,184,083." (Ex. A at A10.)

61. Likewise, the Sold Spreadsheet confirmed that the aggregate stop loss coverage

12

maximum reimbursement was "Unlimited" and reduced Impact's maximum annual spend to "$7,117,456." (Ex. B at B4.)

62. Despite these explicit representations made by BKS to Impact, the Stop Loss Policy did not cap Impact's max costs; instead, it merely covered claims in excess of Impact's deductible up to $1,000,000 and any claims in excess of that amount were required to be covered directly by Impact.

63. BKS is in the business of supplying information regarding insurance coverage.

64. BKS had a duty to exercise ordinary care and skill in procuring the coverage requested by Impact, which includes the duty to ensure the information it communicated to Impact regarding the same was accurate.

65. BKS was careless and/or negligent in ascertaining the truth of the statements it made regarding Impact's max costs being capped and having unlimited stop loss coverage.

66. BKS made the representations with the intent to induce Impact to purchase the Stop Loss Policy.

67. Impact reasonably relied on the accuracy and truthfulness of the statements made by BKS when deciding to purchase the Stop Loss Policy, including but not limited to the fact that the Stop Loss Policy would cap Impact's maximum costs for medical claims.

68. As a result of BKS's misrepresentations, Impact has suffered damages in excess of $1,000,000, representing costs that Impact paid in excess of the maximum cost represented by BKS ($7,117,456).

WHEREFORE, Plaintiff Impact Networking, LLC respectfully requests this Court enter an order in favor of Impact and against Defendant The Baldwin Group Southeast, LLC d/b/a Baldwin Southeast Insurance Services, LLC f/k/a Baldwin Krystyn Sherman Partners, LLC for:

    a. Monetary compensation for Plaintiff's damages resulting from the Defendant's negligent misrepresentation in excess of $1,000,000 to be proven at trial;

    b. Plaintiff's costs; and

    c. Such other and further relief in Impact's favor as this Court deems just and proper.

Dated: November 26, 2025                          Respectfully submitted,

                                                    **IMPACT NETWORKING, LLC**

                                                    By: *Alison L. Constantine*
                                                         One of Its Attorneys

Gould & Ratner LLP
Paul W. Carroll (#6196314)
Alison L. Constantine (#6321453)
222 North LaSalle Street, Suite 300
Chicago, IL 60601
(312) 236-3003
pcarroll@gouldratner.com
aconstantine@gouldratner.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IMPACT NETWORKING, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE BALDWIN GROUP SOUTHEAST, LLC ) <br> d/b/a BALDWIN SOUTHEAST INSURANCE ) <br> SERVICES, LLC f/k/a BALDWIN KRYSTYN ) <br> SHERMAN PARTNERS, LLC ) <br> ) <br> Defendant. | Civil Action No. <br><br> Honorable _____ |

**VERIFICATION**

The undersigned, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the foregoing is true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Dated: November 26, 2025

Greg Ruggie
Corporate Attorney
Impact Networking, LLC